**JENNER & BLOCK LLP**
David R. Singer (SBN 204699)
dsinger@jenner.com
Kate T. Spelman (SBN 269109)
kspelman@jenner.com
Elizabeth Baldridge (SBN 313390)
ebaldridge@jenner.com
2029 Century Park East, Suite 1450
Los Angeles, CA 90067
Telephone: (213) 239-5100

Kara V. Brandeisky (*admitted pro hac vice*)
kbrandeisky@jenner.com
1099 New York Avenue N.W. #900
Washington, D.C. 20001
Telephone: (202) 639-6000

Attorneys for Defendant Move, Inc.

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

NICKI K. APAYDIN, individually and on behalf of similarly situated individuals,

Plaintiff,

v.

MOVE, INC. d/b/a REALTOR.COM, a Delaware corporation,

Defendant.

Case No. 2:25-cv-07905-PA-AS

**DEFENDANT MOVE, INC.'S NOTICE OF MOTION AND MOTION DISMISS PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6); MEMORANDUM OF POINTS AND AUTHORITIES**

Hearing Date: November 10, 2025
Hearing Time: 1:30 p.m.
Courtroom: 9A

Notice of Removal filed: August 22, 2025

Trial Date: None set

TO THE COURT, ALL PARTIES, AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE that, on November 10, 2025, at 1:30 p.m., or as soon thereafter as the Court is available, in the United States Courthouse located at 350 West First Street, Courtroom 9A, Los Angeles, California 90012, Defendant Move, Inc. ("Move") will and hereby does move the Court to dismiss the Complaint in this action without leave to amend pursuant to Federal Rule of Civil Procedure 12(b)(6), on the ground that Plaintiff Nicki K. Apaydin's ("Plaintiff") sole claim for relief based on alleged violations of the California Invasion of Privacy Act, Cal. Pen. Code § 631(a) ("Section 631(a)"), fails to state a claim as to Move. First, Move cannot be directly liable under Section 631(a) because Move is a party to the alleged "communications," which precludes any violation. Second, Plaintiff's Complaint does not allege the requisite elements for a claim that Move aided and abetted a violation of Section 631(a) by a third party, and the facts alleged necessarily preclude any such claim. Plaintiff alleges that she is a Facebook user, which means that she has consented to Facebook's terms of use. Those terms—which are incorporated by reference in the Complaint and attached to Move's accompanying Request for Judicial Notice—show that Plaintiff contractually consented to the exact activities she bases her Complaint upon. Even if that were not the case, Plaintiff's Complaint also fails to allege any interception of protected "content" under Section 631(a), providing an independent ground to dismiss her entire Complaint.

Move's Motion is based on this Notice of Motion and Motion, the attached Memorandum of Points and Authorities, any additional briefing on this subject, and the evidence and arguments that may be presented to the Court at a hearing on this matter.

This Motion is made following the conference of counsel pursuant to Local Rule 7-3, which took place on September 16, 2025.

Dated: September 24, 2025 JENNER & BLOCK LLP

By: */s/ David R. Singer*

David R. Singer
Kate T. Spelman
Elizabeth Baldridge
Kara Brandeisky

Attorneys for Defendant Move, Inc.

# TABLE OF CONTENTS

MEMORANDUM OF POINTS AND AUTHORITIES ........ 1
I. INTRODUCTION ........ 1
II. FACTS ........ 2
III. LEGAL STANDARD ........ 5
IV. PLAINTIFF FAILS TO STATE A CLAIM FOR VIOLATION OF CIPA SECTION 631(a) ........ 6
A. Move Cannot be Directly Liable Under Section 631(a). ........ 7
B. Plaintiff Fails to State a Claim for Aiding and Abetting Liability Under Section 631(a). ........ 9
i. Plaintiff Has Not and Cannot Plausibly Allege that Facebook Intercepted Her Communications "Without Consent." ........ 9
ii. Clause One of Section 631(a) (Telephone Wiretapping) Does Not Apply to Alleged Communications Over the Internet ........ 12
iii. Plaintiff Fails to Allege Any Interception of Protected "Content" Under Section 631(a) Clause Two. ........ 13
C. Plaintiff Should Not be Permitted Leave to Amend Her Complaint ........ 16
V. CONCLUSION ........ 16

# TABLE OF AUTHORITIES


**Page(s)**

**Cases**

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) .................... 5, 10

*Augustine v. Great Wolf Resorts, Inc.*,
2024 WL 3450967 (S.D. Cal. July 18, 2024).................... 15

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) .................... 5

*Burnett v. Nw. Tr. Servs., Inc.*,
No. CV 14-00291, 2015 WL 566702 (C.D. Cal. Feb. 9, 2015).................... 5, 10

*Chemehuevi Indian Tribe v. Newsom*,
919 F.3d 1148 (9th Cir. 2019).................... 12

*Cook, Perkiss & Liehe, Inc. v. N. Cal. Coll. Serv., Inc.*,
911 F.2d 242 (9th Cir. 1990).................... 15

*In re Cooper Mountain Securities Litig.*,
311 F. Supp. 2d 857 (N.D. Cal. 2004) .................... 5

*In re Facebook Biometric Info. Priv. Litigation*,
185 F. Supp. 3d 1155 (N.D. Cal. 2016) .................... 11

*In re Facebook, Inc., Consumer Privacy User Profile Litig.*,
402 F. Supp. 3d 767 (N.D. Cal. 2019) .................... 6

*Facebook, Inc. v. 9 Xiu Network (Shenzhen) Tech. Co.*,
2021 WL 5707741 (N.D. Cal. Oct. 21, 2021) .................... 11

*In re Google Assistant Privacy Litig.*,
457 F. Supp. 3d 797 (N.D. Cal. 2020) .................... 7, 13

*In re Google RTB Consumer Priv. Litig.*,
606 F. Supp. 3d 935 (N.D. Cal. 2022) .................... 13

*Graham v. Noom, Inc.*,
533 F. Supp. 3d 823 (N.D. Cal. 2021) .................... 15

*Gutierrez v. Converse Inc.*,
2025 WL 1895315 (9th Cir. July 9, 2025) (Bybee, J., concurring in part)................ 13

*Jones v. Tonal Sys., Inc.*,
2024 WL 4357558 (S.D. Cal. Sept. 30, 2024) ...................................................... 14

*Licea v. Am. Eagle Outfitters, Inc.*,
659 F. Supp. 3d 1072 (C.D. Cal. 2023)........................................................... 9, 13

*Licea v. Old Navy, LLC*,
669 F. Supp. 3d 941 (C.D. Cal. 2023) ..................................................................8

*Licea v. Old Navy, LLC*,
No. 22-CV-01413, 2023 WL 3012527 (C.D. Cal. Apr. 19, 2023).............................7

*Mastel v. Miniclip SA*,
549 F. Supp. 3d 1129 (E.D. Cal. 2021)..................................................................6

*McCoy v. Alphabet, Inc.*,
2021 WL 405816 (N.D. Cal. Feb. 2, 2021) ......................................................... 15

*Membrila v. Receivables Performance Mgmt, LLC*,
2010 WL 1407274 (S.D. Cal. Apr. 6, 2010)...........................................................8

*Meta Platforms, Inc. v. Ates*,
2023 WL 4035611 (N.D. Cal. May 1, 2023) ........................................................ 11

*Meta Platforms, Inc. v. Nguyen*,
2023 WL 8686924 (N.D. Cal. Nov. 21, 2023)...................................................... 11

*N. Atl. Imports, LLC v. NexGrill Indus., Inc.*,
No. ED CV 19-01195, 2020 WL 1042209 (C.D. Cal. Jan. 23, 2020).........................5

*Ramos v. Gap*,
2025 WL 2144837, at *4 (N. D. Cal. July 29, 2025).............................................. 14

*Ramos v. The Gap, Inc.*,
2024 WL 4351868 (N.D. Cal. Sept. 30, 2024)............................................... 12, 14

*Rodriguez v. Google LLC*,
2022 WL 214552 (N.D. Cal. Jan. 25, 2022) ......................................................... 10

*Rogers v. Ulrich*,
52 Cal. App. 3d 894 (1975) .................................................................................8

*Rosenow v. Facebook, Inc.*,
2020 WL 1984062 (S.D. Cal. Apr. 27, 2020) .......... 9

*SmileCare Dental Grp. v. Delta Dental Plan of Cal., Inc.*,
88 F.3d 780 (9th Cir. 1996) .......... 5

*Sprewell v. Golden State Warriors*,
266 F.3d 979 (9th Cir. 2001) .......... 5

*Steckman v. Hart Brewing, Inc.*,
143 F.3d 1293 (9th Cir. 1998) .......... 6

*Tavernetti v. Super. Ct.*,
22 Cal. 3d 187 (1978) .......... 6

*Warden v. Kahn*,
99 Cal. App. 3d 805 (1979) .......... 8

*Yoon v. Lululemon USA, Inc.*,
549 F. Supp. 3d 1073 (C.D. Cal. 2021) .......... 15

*Zixiang Li v. Kerry*,
710 F.3d 995 (9th Cir. 2013) .......... 6

*Zomm, LLC v. Apple Inc.*,
391 F. Supp. 3d 946 (N.D. Cal. 2019) .......... 5, 10, 11

*In re Zynga Privacy Litigation*,
750 F.3d 1098 (9th Cir. 2014) .......... 13, 14, 15

**Statutes**

Cal. Penal Code § 631(a) .......... *passim*

CIPA .......... *passim*

CIPA § 631 .......... 8

CIPA § 631(a)[ii] .......... 15

Electronic Communications and Privacy Act .......... 13

Privacy Act .......... 1

Wiretap Act .......... 10

**Court Rules**

Rule 12........................................................................................................5

**Other Authorities**

Merriam-Webster, "URL,".............................................................................3

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

This putative class action arises out of Plaintiff Nicki K. Apaydin's ("Plaintiff") alleged visits to Realtor.com, a website operated by Defendant Move, Inc. ("Move"). Plaintiff asserts that Move violated Section 631(a) of the California Invasion of Privacy Act ("CIPA") by allegedly using the Meta Pixel to share with Facebook information regarding webpages that Realtor.com visitors viewed, and Facebook IDs associated with those visitors, so that Facebook could "target specific users with tailored advertisements based on their viewing history and website activity." Compl. ¶¶ 4-5. Plaintiff's CIPA claim seeks to hold Move liable for facilitating garden-variety targeted advertising online to which Plaintiff expressly consented when she became a Facebook account holder. Because Plaintiff contractually consented to the conduct she now complains of, her claim is barred by the statute she is suing under as well as by well-settled California and federal law.

As an initial matter, Move cannot be directly liable under Section 631(a) because CIPA does not impose liability on a party to the communication at issue. Plaintiff also cannot state a CIPA claim against Move on an "aiding and abetting" theory of liability for several distinct reasons.

To state a viable CIPA Section 631(a) claim, a claimant must plausibly allege that the defendant aided a third party's interception of communications *without the claimant's consent* as to that third party's activities. The only third party identified in the Complaint is Facebook (owned by Meta). Plaintiff's Complaint includes a conclusory statement that third-party interception of the putative class's alleged communications on Realtor.com occurred without consent, but Plaintiff also alleges (and relies on the fact) that she is a Facebook account holder. Courts have repeatedly held that Facebook account holders are bound by Facebook's terms and policies. As a Facebook account holder, Plaintiff expressly agreed that Facebook would supply its Meta Pixel to third party websites (like Realtor.com)

so that Facebook could properly track Plaintiff's off-Facebook activity and then serve relevant, targeted ads to Plaintiff when she uses Facebook. Plaintiff's express consent to Facebook's supposed interception is fatal to her CIPA claim and grounds for dismissal as a matter of law.

Even setting aside her express consent, Plaintiff cannot state a claim for "telephone wiretapping" under CIPA because she does not allege *telegraph* or *telephone* communications here. Nor can she state a claim for "eavesdropping" because the so-called interception pled in her Complaint did *not* include the "*contents*" of any alleged communications with Move, which is required to state an eavesdropping claim under CIPA Section 631(a). Instead, Plaintiff alleges only that the URLs (i.e., the website addresses) of the Realtor.com video pages she visited along with her Facebook ID, were shared with a third party (i.e., Facebook). Courts have conclusively held that the identity of a website visitor and the website address they visited do not constitute "contents" of a communication under CIPA.

Because Plaintiff's Complaint lacks any legal merit for multiple independent reasons, the Court should dismiss it without leave to amend.

## II. FACTS

Move operates the real estate listings website Realtor.com. *See* Compl. ¶ 2. In addition to real estate listings, Realtor.com also hosts video content, including videos providing site visitors with the opportunity to "view and preview real estate." *Id.* at ¶ 3. According to Plaintiff, Move "installed [on Realtor.com] pixels and other tracking technologies developed by third party advertisers, including the Meta Pixel, to intercept, collect, and disclose its Website visitors' personally identifiable information ('PII') identifying specific videos that they viewed." *Id.* at ¶ 4. Plaintiff's Complaint does not identify any third-party advertisers aside from Meta/Facebook. *See id.* at ¶ 21.

Plaintiff further alleges that by installing online tools like the Meta Pixel, Move "knowingly discloses and aides and abets the interception of [Plaintiff's] information to

third-party tracking, analytic, and advertising providers so that they can target specific users with tailored advertisements based on their viewing history and website activity." *Id.* at ¶ 5. Plaintiff claims that when Realtor.com visitors watch videos on the site, their "PII and the contents of their electronic communications are intercepted in real time while in transit by such third parties, including by Facebook via its Meta Pixel." *Id.* at ¶ 21. Specifically, Plaintiff identifies the information supposedly "intercepted" as a website visitor's "URL request" reflecting the video content they viewed, "along with the identity of the Website visitor" in the form of their "Facebook ID." *Id.* at ¶¶ 23-25. Plaintiff alleges that at all relevant times she "has been a Facebook account holder" with an assigned Facebook ID. *Id.* at ¶¶ 23, 34.[1]

Plaintiff alleges that she "never specifically and separately consented, agreed, authorized, or otherwise permitted [Move] to disclose, and aid in the interception of, her electronic communications with third parties." Compl. ¶ 37. The Complaint also includes the conclusory allegation that "[Move]'s third-party tracking providers willfully and without the consent of all parties to the communication" intercepted the alleged "electronic communications between Plaintiff and Class Members, on the one hand, and [Move], on the other, while the electronic communications were in transit or were being sent from or received at a place within California." *Id.* ¶ 56. This barebones statement merely parrots the statutory language of Section 631(a). But Plaintiff's Complaint is conspicuously devoid of any factual allegations that she did not consent to Facebook/Meta – the only third-party eavesdropper identified in the Complaint – collecting information about her online activity.

[1] A URL or Uniform Resource Locator is the address of a resource (such as a document or website) on the Internet. *See* Merriam-Webster, "URL," https://www.merriam-webster.com/dictionary/URL (last visited September 18, 2025). In other words, a website address.

Instead, the Complaint contains affirmative factual allegations and admissions that necessarily demonstrate Plaintiff consented to everything she now complains about: ***she alleges that, at all relevant times, she had a Facebook account***. Compl. ¶ 34.

Everyone with a Facebook account, including Plaintiff, must accept the Facebook terms, which include the Meta Terms of Use, Facebook Ads Policy, and Meta Privacy Policy (together, the "Facebook Terms"). By alleging that she is a Facebook user and, in the same breath, claiming that she never consented to being tracked by Facebook for targeted advertising, Plaintiff is necessarily putting the Facebook Terms squarely at issue in her Complaint and incorporating them by reference – even though she failed to attach those terms to her Complaint. The Meta Terms of Use are publicly available at https://www.facebook.com/terms/, and expressly link to and incorporate by reference the Facebook Ads Policy and Meta Privacy Policy, which are publicly available at https://www.facebook.com/about/ads and https://www.facebook.com/privacy/policy, respectively. Relevant portions of the Facebook Terms are also attached as Exhibit A to Move's concurrently-filed Request for Judicial Notice ("RJN").

The Facebook Terms make clear that Facebook users like Plaintiff expressly and contractually consent to online tracking and targeted advertising. The Facebook Terms set forth the trade-off that Facebook users agree to: "We [Facebook] don't charge you to use Facebook or the other products and services covered by these Terms . . . Instead, businesses and organizations, and other persons pay us to show you ads for their products and services. ***By using our Products, you agree*** that we can show you ads that we think may be relevant to you and your interests. ***We use your personal data*** to help determine which personalized ads to show you." RJN Ex. A at p. 001 (emphasis added). The Facebook Terms further specify ***"[w]ebsites you visit or apps you use can send Facebook data directly*** by using our business tools (such as a pixel) to help us show you ads based on products or services you've looked at, such as a shirt on a clothing retailer's website. ***Examples of this include . . . [v]iewing one of their web pages.***" *Id.* at p. 014 (emphasis added); *see also id.*

at pp. 016-017 (explaining that third parties like Realtor.com "might put one of [Facebook's] Business Tools, the Meta Pixel, on their website" in order to send Facebook "device information," information about "websites you visit," and "your advertising device ID" in order to "match your activities with your account"). The Facebook Terms could not be more clear, and Plaintiff opted into this trade-off by using Facebook's services for free and accepting those terms.

## III. LEGAL STANDARD

To survive a motion to dismiss, Plaintiff's complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A court may dismiss a complaint for "(1) lack of a cognizable legal theory or (2) insufficient facts under a cognizable legal claim." *SmileCare Dental Grp. v. Delta Dental Plan of Cal., Inc.*, 88 F.3d 780, 783 (9th Cir. 1996); *see also N. Atl. Imports, LLC v. NexGrill Indus., Inc.*, No. ED CV 19-01195, 2020 WL 1042209, at *1 (C.D. Cal. Jan. 23, 2020).

"Conclusory allegations or allegations that are no more than a statement of a legal conclusion 'are not entitled to the assumption of truth.'" *Burnett v. Nw. Tr. Servs., Inc.*, No. CV 14-00291, 2015 WL 566702, at *1 (C.D. Cal. Feb. 9, 2015) (quoting *Iqbal*, 556 U.S. at 679). Put another way, "a pleading that merely offers 'labels and conclusions,' a 'formulaic recitation of the elements,' or 'naked assertions' will not be sufficient to state a claim upon which relief can be granted." *Id.* (quoting *Iqbal*, 556 U.S. at 678). Courts also need not accept as true allegations that contradict documents incorporated by reference, attached to the pleadings, or properly subject to judicial notice. *See Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001); *Zomm, LLC v. Apple Inc.*, 391 F. Supp. 3d 946, 952 (N.D. Cal. 2019). "If a plaintiff fails to attach to the complaint the documents on which the complaint is based, a defendant may attach such documents to its motion to

dismiss for the purpose of showing that the documents do not support plaintiff's claim." *In re Cooper Mountain Securities Litig.*, 311 F. Supp. 2d 857, 865 (N.D. Cal. 2004).

On a Rule 12 motion, courts can consider documents incorporated by reference in the pleadings. Here, that extends to the Facebook Terms because Plaintiff's Complaint expressly alleges that at all relevant times she was a Facebook user, which necessarily means that she is subject to the Facebook Terms. Plaintiff also alleges that she never consented to Facebook tracking her, and, in doing so, she has placed the Facebook Terms directly at issue. The Court can therefore consider the Facebook Terms in ruling on Move's motion. *See*, *e.g.*, *In re Facebook, Inc., Consumer Privacy User Profile Litig.*, 402 F. Supp. 3d 767, 791 (N.D. Cal. 2019) (incorporating Facebook data use policy by reference and observing, "California law makes it quite easy to incorporate a document by reference").

The Ninth Circuit has made clear that a court need not grant leave to amend if doing so would be an "exercise in futility" or "where the amended complaint would also be subject to dismissal." *Steckman v. Hart Brewing, Inc.*, 143 F.3d 1293, 1295, 1298 (9th Cir. 1998) (affirming dismissal of an initial complaint and denial with prejudice of motion to amend complaint); *see also Zixiang Li v. Kerry*, 710 F.3d 995, 999 (9th Cir. 2013) ("[D]ismissal without leave to amend is proper if it is clear that the complaint could not be saved by amendment.") (citations omitted).

## IV. PLAINTIFF FAILS TO STATE A CLAIM FOR VIOLATION OF CIPA SECTION 631(a)

While CIPA Section 631(a) is globally entitled "Wiretapping," the California Supreme Court has explained that it contains three operative clauses covering "three distinct and mutually independent patterns of conduct": (1) "intentional wiretapping" through use of a "telegraph or telephone wire, line, cable, or instrument, including the wire, line, cable, or instrument of any internal telephonic communication system" ("Clause One" or "Telephone Wiretapping"); (2) "willfully attempting to learn the contents or meaning of a communication in transit over a wire" ("Clause Two" or "Eavesdropping"); and (3)

"attempting to use or communicate information obtained as a result of engaging in either of the two previous activities" ("Clause Three" or "Use"). *Mastel v. Miniclip SA*, 549 F. Supp. 3d 1129, 1134 (E.D. Cal. 2021) (quoting *Tavernetti v. Super. Ct.*, 22 Cal. 3d 187, 192 (1978)). "Section 631(a) further contains a fourth basis for liability, for anyone 'who aids, agrees with, employs, or conspires with any person or persons to unlawfully do, or permit, or cause to be done any of the' other three bases for liability" ("Clause Four" or "Aiding and Abetting"). *Id*. (quoting Cal. Penal Code § 631(a)). To prove liability under Clause Four, Plaintiff must establish wrongdoing under one of the other three clauses. *Licea v. Old Navy, LLC*, No. 22-CV-01413, 2023 WL 3012527, at *3 (C.D. Cal. Apr. 19, 2023).

Plaintiff's Complaint does not state a violation of this statute. Move cannot be directly liable under Section 631(a) because it is a party to the allegedly intercepted communications. And any aider-and-abettor liability is foreclosed as a matter of law for three independent reasons: (i) Plaintiff cannot allege that the purported interception was "without consent" because she admits she was a Facebook user at all relevant times and, therefore, assented to the binding Facebook Terms; (ii) Clause One (Telephone Wiretapping) does not apply to communications over the *internet*; and (iii) Plaintiff fails to allege the interception of the "content" of communications sufficient to state a claim under Clause Two. Further, without a Clause One or Clause Two violation, there cannot be a claim (of "Use") under Clause Three. *See In re Google Assistant Privacy Litig*., 457 F. Supp. 3d 797, 827 (N.D. Cal. 2020) ("Plaintiffs must establish that the information at issue . . . was obtained through a violation of the first or second clauses [of § 631(a)]. Because Plaintiffs have not done so, they have also failed to plead a violation of the third clause.").

**A. Move Cannot be Directly Liable Under Section 631(a).**

Plaintiff's Complaint is vague about whether Plaintiff is asserting a claim against Move for a direct violation of Section 631(a), or solely for "aiding and abetting" an alleged

violation of Section 631(a). Plaintiff's allegations as to her cause of action for violation of Section 631(a) (Complaint paragraphs 52-59) exclusively discuss "third-party tracking providers" and Move's alleged actions in "aid[ing] and conspir[ing]" with those third parties. However, elsewhere, Plaintiff alleges that "[b]y intercepting ***and*** aiding third parties to intercept Plaintiff's contents of her electronic communications . . . [Move] has intentionally and knowingly violated Plaintiff's privacy rights." Compl. ¶ 39 (emphasis added).

Although Plaintiff's imprecise allegations cast doubt as to what exactly Plaintiff is attempting to plead, there is zero doubt that Move cannot be directly liable for a violation of CIPA under the circumstances alleged. The California Court of Appeal has long held that a party to a communication cannot, by definition, be liable for wiretapping its own communication (sometimes called the "party exception"). *See Rogers v. Ulrich*, 52 Cal. App. 3d 894, 898-899 (1975) (examining legislative intent behind CIPA and finding that "participant recording was not meant to be included," and "only a third party can listen secretly to a private conversation"); *see also Warden v. Kahn*, 99 Cal. App. 3d 805, 811 (1979) (CIPA section 631 [which Plaintiff bases her cause of action upon] "has been held to apply only to eavesdropping by a third party and not to recording by a participant to the conversation").

Plaintiff's Complaint expressly alleges that the "communication" at issue is Plaintiff's interaction *with Move's website Realtor.com*. *See* Compl. ¶ 29. Because Move is necessarily a party to those communications, Plaintiff cannot state a CIPA claim against Move for a direct violation of Section 631(a) as a matter of law. *See, e.g.*, *Membrila v. Receivables Performance Mgmt, LLC*, 2010 WL 1407274, at *2 (S.D. Cal. Apr. 6, 2010) (dismissing claim for violation of Section 631 where "Plaintiff does not allege eavesdropping by a third party").

### B. Plaintiff Fails to State a Claim for Aiding and Abetting Liability Under Section 631(a).

#### i. Plaintiff Has Not and Cannot Plausibly Allege that Facebook Intercepted Her Communications "Without Consent."

To state a viable claim that Move aided and abetted a violation of Section 631(a), Plaintiff must "first adequately plead . . . [a] third party's . . . underlying violations of the statute." *Licea v. Old Navy, LLC*, 669 F. Supp. 3d 941, 946-947 (C.D. Cal. 2023). Among other things, this means Plaintiff must allege that Facebook (the only third-party eavesdropper identified in the Complaint) intercepted the contents of Plaintiff's online communications "without [her] consent." Cal. Penal C. § 631(a). Plaintiff's Complaint fails to include a specific factual allegation that she did not consent to Facebook's alleged interception of her activity on Realtor.com. Instead, the Complaint merely states in a conclusory manner that "[Move]'s third-party tracking providers willfully and without the consent of all parties to the communication" intercepted the alleged "electronic communications between Plaintiff and Class Members, on the one hand, and [Move], on the other, while the electronic communications were in transit or were being sent from or received at a place within California." *Id.* at ¶ 56. To the extent this can be read as an allegation that Plaintiff did not consent to Facebook's alleged interception of her Realtor.com activity via the Meta Pixel, the Court must disregard this allegation for at least two reasons.

***First***, Plaintiff's allegation does nothing more than parrot the text of Section 631(a). The statute requires a showing that a defendant "willfully and without the consent of all parties to the communication . . . reads, or attempts to read, or to learn the contents or meaning of any message, report, or communication while the same is in transit . . . or is being sent from, or received at any place within this state." Cal. Penal C. § 631(a). Plaintiff's allegation recites the statute's verbatim wording but is devoid of any substantiating facts to support the claim that the alleged third-party interception by

Facebook occurred without consent. Courts have found this kind of threadbare allegation insufficient to support a CIPA claim.

For example, in *Licea v. American Eagle Outfitters*, Judge Fitzgerald dismissed a CIPA claim because the complaint merely stated that the statutory elements were met. 659 F. Supp. 3d 1072, 1084-1085 (C.D. Cal. 2023). The court held that the *Licea* plaintiff "does not allege sufficient facts as to *how* and *when*" the statute was violated, and "conclusory allegations fail to support a claim under section 631(a)." *Id.* (emphasis added). Other courts have reached the same conclusion. *See*, *e.g.*, *Rosenow v. Facebook, Inc.*, 2020 WL 1984062 (S.D. Cal. Apr. 27, 2020) (dismissing plaintiffs' Wiretap Act claims for failing to allege sufficient facts about interception); *Rodriguez v. Google LLC*, 2022 WL 214552 at *1 (N.D. Cal. Jan. 25, 2022) (same). Because Plaintiff's allegation that Facebook allegedly acted "without the consent of all parties to the communication" is "no more than a statement of a legal conclusion," it is "not entitled to the assumption of truth" and should be disregarded. *See Burnett*, 2015 WL 566702, at *1 (quoting *Iqbal*, 556 U.S. at 679).

***Second***, Plaintiff's Complaint contains affirmative factual allegations confirming she expressly consented to Facebook's supposed interception because she admits that she was a Facebook user with a Facebook account at all relevant times. Compl. ¶ 34. The Facebook Terms,[2] which are publicly available and, as discussed above, the Court may consider as part of the Complaint, contradict and supersede Plaintiff's claim that she never gave Facebook permission to track the websites she visits online. *See Zomm*, 391 F. Supp. 3d at 952 n.2 (finding Apple's Confidentiality Agreement was incorporated by reference in complaint and allegations of complaint could not contradict terms of agreement).

The Facebook Terms are upfront, written in plain English, and explicit about how Facebook collects user data in exchange for providing a free social networking service: "We [Facebook] don't charge you to use Facebook or the other products and services

[2] *See also* Move's concurrently-filed RJN.

covered by these Terms . . . Instead, businesses and organizations, and other persons pay us to show you ads for their products and services. By using our Products, you agree that we can show you ads that we think may be relevant to you and your interests. ***We use your personal data*** to help determine which personalized ads to show you." RJN Ex. A at p. 001 (emphasis added).

After disclosing the business rationale behind collecting its users' "personal data" to show targeted ads, Facebook expressly discloses that it may obtain such data from third parties, like Realtor.com, which "might put one of [Facebook's] Business Tools, the Meta Pixel, on their website." *Id.* at p. 016. Indeed, ***Facebook account holders like Plaintiff expressly consent to Facebook's right to receive from third parties*** their "device information, ***[w]ebsites [they] visit*** and cookie data, like through Social Plugins or the Meta Pixel . . . [t]he ads [they] see and how [they] interact with them," "[h]ow [they] use our partners' products and services, whether online or in person," and their "advertising device ID" in order to "match [their] activities with [their] account," among other data. *Id.* at p. 017 (emphasis added). This consent plainly includes Facebook's alleged use of the Meta Pixel to obtain the URLs of the Realtor.com webpages Plaintiff visited while she was a Facebook account holder, along with her Facebook ID.

Federal courts in California have consistently found that Facebook account holders are bound by the Facebook Terms. For example, in *In re Facebook Biometric Info. Priv. Litigation*, 185 F. Supp. 3d 1155, 1167 (N.D. Cal. 2016), the court held that "all [Facebook account holders] agreed to the current user agreement." Because Plaintiff alleges that she has been a Facebook account holder at all relevant times (*see* Compl. ¶ 34), she cannot escape the fact that she assented to the Facebook Terms. *See also Meta Platforms, Inc. v. Nguyen*, 2023 WL 8686924, at *7 (N.D. Cal. Nov. 21, 2023) ("When they created Facebook accounts, Defendants agreed to Facebook's TOS."); *Meta Platforms, Inc. v. Ates*, 2023 WL 4035611, at *6 (N.D. Cal. May 1, 2023) ("When Ates created Instagram accounts, he agreed to Instagram [owned by Meta]'s terms of service."); *Facebook, Inc. v.*

*9 Xiu Network (Shenzhen) Tech. Co.*, 2021 WL 5707741, at *5 (N.D. Cal. Oct. 21, 2021) ("When they created Facebook and Instagram accounts, the defendants agreed to terms of service and community standards."). Because the Facebook Terms expressly allow Facebook to collect Plaintiff's off-Facebook website activity via the Meta Pixel, Plaintiff's conclusory and conflicting allegations to the contrary must be rejected. *See* Zomm, 391 F. Supp. 3d at 952 (court need not accept allegations that contradict document incorporated by reference in complaint).

Because Plaintiff does not and cannot plausibly allege that Facebook intercepted Plaintiff's internet activity without consent, and because Move cannot be liable for aiding and abetting an alleged CIPA violation that never happened as a matter of law, Plaintiff is foreclosed from stating any Section 631(a) aiding and abetting claim as to Move, and Plaintiff's Complaint should be dismissed with prejudice.

**ii. Clause One of Section 631(a) (Telephone Wiretapping) Does Not Apply to Alleged Communications Over the Internet.**

Plaintiff's Complaint invokes Clause One of Section 631(a), which prohibits any person or entity from "intentionally tap[ping], or mak[ing] any unauthorized connection … with any telegraph or telephone wire." *See* Compl. ¶ 14. However, Plaintiff fails to allege any such "tapping" or "unauthorized connection" of a "telegraph or telephone wire" by Move. Nonetheless, even if Plaintiff tried to substantiate her bare allegation of a Clause One violation, the statute on its face does not apply to the kind of internet activity at issue in Plaintiff's Complaint.

Clause One expressly applies only to "any telegraph or telephone wire, line, cable, or instrument." Cal. Penal C. § 631(a). A plain reading of this text reflects that "wire, line, cable, or instrument" each modify "telegraph or telephone," meaning that *only* those two technologies are contemplated by Clause One. The statutory text does not extend Clause One to the internet or any other technologies aside from telegraphs and telephones. *See Chemehuevi Indian Tribe v. Newsom*, 919 F.3d 1148, 1151 (9th Cir. 2019) (in interpreting

a statute, the plain language "is conclusive"). Here, Plaintiff's Complaint does not in any way relate to or even mention a telegraph machine or a telephone.

Courts have consistently adopted this straightforward interpretation of Clause One. *See*, *e.g.*, *Ramos v. The Gap, Inc.*, 2024 WL 4351868 (N.D. Cal. Sept. 30, 2024) ("Here, the first clause is not simply silent about what forms of technology and types of communications it applies to. Rather, it is specifically limited to 'telegraph or telephone' communications, such that an expansion to other technologies would be inappropriate. . . The Court cannot ignore this language and rewrite the statute to apply more broadly."); *Gutierrez v. Converse Inc.*, 2025 WL 1895315, at *2 (9th Cir. July 9, 2025) ("If the California legislature wanted to apply § 631(a) to the internet, it could do so by amending that provision or adding to CIPA's statutory scheme.") (Bybee, J., concurring in part); *Licea v. Am. Eagle Outfitters, Inc.*, 659 F. Supp. 3d 1072, 1080 (C.D. Cal. 2023) ("the first clause of Section 631(a) does not apply to communications over the internet"); *In re Google Assistant Priv. Litig.*, 457 F. Supp. 3d 797, 825-26 (N.D. Cal. 2020) (holding that the first clause "expressly requires that the unauthorized connection be made with any telegraph or telephone wire, line, cable, or instrument") (internal quotations omitted). Thus, there is no viable claim here for violation of Clause One.

**iii. Plaintiff Fails to Allege Any Interception of Protected "Content" Under Section 631(a) Clause Two.**

As a further basis for dismissal, Plaintiff's Complaint also fails to allege that the Meta Pixel intercepts the "contents" of any communication that CIPA protects, as required to state a claim under Clause Two.

Section 631(a) Clause Two prohibits unauthorized access to the "contents" of communication while the same is "in transit."[3] The definition of "contents" under CIPA mirrors the definition under the Electronic Communications and Privacy Act ("ECPA").

[3] Move denies that the Meta Pixel transmits any information "in transit," but recognizes that issue raises fact questions not suitable for resolution at the pleading stage.

*See In re Google RTB Consumer Priv. Litig.*, 606 F. Supp. 3d 935, 949 (N.D. Cal. 2022). In *In re Zynga Privacy Litigation*, 750 F.3d 1098, 1106 (9th Cir. 2014), the Ninth Circuit held that under the ECPA "'contents' refers to the intended message conveyed by the communication, and does not include record information regarding the characteristics of the message that is generated in the course of the communication." "In other words, courts must consider whether the intercepted information is information about a user's communication, or the communication itself. . . . Only the latter is protected under CIPA." *Ramos*, 2024 WL 4351868, at *4 (internal quotation marks omitted). Plaintiff bears the burden of alleging that the intercepted information was "contents" and not "record information." *Jones v. Tonal Sys., Inc.*, 2024 WL 4357558, at *7 (S.D. Cal. Sept. 30, 2024).

Plaintiff's allegations and admissions in the Complaint confirm that no "contents" of any communication were intercepted here. At most, the information Facebook allegedly intercepted from Realtor.com amounts only to "record information," such as website addresses (i.e., URLs) or Plaintiff's Facebook ID. According to Plaintiff, that information is limited to (1) the "specific videos that [a site visitor] viewed" on Realtor.com, which is reflected in the visitor's "URL request" for the webpage on which the video is located; and (2) "the identity of the Website visitor" in the form of their Facebook ID, which is the "unique and persistent identifier that Facebook assigns to each user." Compl. ¶¶ 23-25. In other words, website addresses Plaintiff visited and her Facebook user ID. These are not "contents" of a communication that CIPA protects.

The Ninth Circuit has already held in *In re Zynga* that information generated by clicking on a web address does ***not*** fall within the definition of protected "contents." *See In re Zynga*, 750 F.3d at 1107. There, the court found that the URL a site visitor accessed "identifie[d] the location of a webpage a user [was] viewing on the internet, and therefore function[ed] like an 'address'" and not as protected content. *Id.* The court also held that a Facebook ID only "function[ed] as a 'name' or a 'subscriber number or identity.'" *Id.* Another recent case, *Ramos v. Gap*, followed *In re Zynga* to hold at the motion to dismiss

stage that a user's "click" on a URL was not protected communication or content under CIPA. 2025 WL 2144837, at *4 (N.D. Cal. July 29, 2025). The *Ramos* court expressly rejected the argument that a "'click' on a URL [is] a communication that the user is interested in the information linked in the URL," noting that "the Ninth Circuit has not drawn such sweeping conclusions" about protected "contents" under CIPA. *Id.* at 4.

Numerous other courts have rejected similar attempts to misclassify record information as "contents." *See*, *e.g.*, *Jones v. Tonal Sys., Inc.*, 2024 WL 4357558, at *8 (S.D. Cal. Sept. 30, 2024) (quoting *Yoon v. Lululemon USA, Inc.*, 549 F. Supp. 3d 1073, 1082 (C.D. Cal. 2021)) ("CIPA § 631(a)[ii] protects only the internal, user-generated material of a message, not routine identifiers," including users' "keystrokes, mouse clicks, pages viewed, and shipping and billing information ... [and] the date and time of the visit, the duration of the visit, Plaintiff's IP address, her location at the time of the visit, her browser type, and the operating system on her device."); *Augustine v. Great Wolf Resorts, Inc.*, 2024 WL 3450967, at *1, 5–6 (S.D. Cal. July 18, 2024) (holding third-party tracking of website browsing activity, including "pages . . . viewed," using JavaScript tracking code which placed cookies onto Plaintiff's browser, failed to constitute the alleged interception of "content"); *McCoy v. Alphabet, Inc.*, 2021 WL 405816, at *14 (N.D. Cal. Feb. 2, 2021) ("data on when and how often an Android Smartphone user opens and runs non-Google apps and the amount of time spent on the apps" is not content; "*In re Zynga* forecloses a CIPA claim predicated on this type of record information"); *Graham v. Noom, Inc.*, 533 F. Supp. 3d 823, 833 (N.D. Cal. 2021) ("IP addresses, locations, browser types, and operating systems [are] not content"; nor are "the name, address and subscriber number or identity of a subscriber or customer" or "the origin, length, and time of a call, or geolocation data");

Therefore, under well-settled law of this Circuit, Plaintiff's Section 631(a) Clause Two claim should be dismissed with prejudice. Because Plaintiff has no Clause One or Clause Two claim, any derivative Clause Three claim fails, and she cannot state a viable Section 631(a) aiding-and-abetting claim against Move.

### C. Plaintiff Should Not be Permitted Leave to Amend Her Complaint.

Where amendment would be futile, courts should dismiss a complaint without leave to amend. *See, e.g.*, *Cook, Perkiss & Liehe, Inc. v. N. Cal. Coll. Serv., Inc.*, 911 F.2d 242, 247 (9th Cir. 1990). Here, any amendment by Plaintiff would be incapable of curing numerous defects in her Complaint. These include but are not limited to the fact that Move cannot be liable for direct violation of CIPA as a party to the communications at issue; the fact that Plaintiff expressly consented to the use of the Meta Pixel by third parties like Realtor.com when she became a Facebook account holder; the fact that the first clause of Section 631(a) does not apply to communications over the internet; and the fact that the information allegedly intercepted by Move amounts to nothing more than "record" information (not "contents" of a communication protected by the second clause of Section 631(a)). In granting Move's motion to dismiss, the Court should therefore deny Plaintiff leave to amend her Complaint.

## V. CONCLUSION

For the foregoing reasons, the Court should dismiss Plaintiff's Complaint without leave to amend.

Dated: September 24, 2025 JENNER & BLOCK LLP

By: *<u>/s/ David R. Singer</u>*
David R. Singer
Kate T. Spelman
Elizabeth Baldridge
Kara Brandeisky

Attorneys for Defendant Move, Inc.

**CERTIFICATE OF COMPLIANCE**

This certifies that Move's brief complies with the requirements of Local Rule 11-6. The brief contains 5,244 words as calculated by the word processing program.

September 24, 2025

*/s/ David R. Singer*
David R. Singer