**JENNER & BLOCK LLP**
David R. Singer (SBN 204699)
dsinger@jenner.com
Kate T. Spelman (SBN 269109)
kspelman@jenner.com
Elizabeth Baldridge (SBN 313390)
ebaldridge@jenner.com
2029 Century Park East, Suite 1450
Los Angeles, CA 90067
Telephone: (213) 239-5100

Kara V. Brandeisky (*admitted pro hac vice*)
kbrandeisky@jenner.com
1099 New York Avenue N.W. #900
Washington, D.C. 20001
Telephone: (202) 639-6000

Attorneys for Defendant Move, Inc.

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

NICKI K. APAYDIN, individually and on behalf of similarly situated individuals,

Plaintiff,

v.

MOVE, INC. d/b/a REALTOR.COM, a Delaware corporation,

Defendant.

Case No. 2:25-cv-07905-PA-AS

**DEFENDANT MOVE, INC.'S REPLY IN SUPPORT OF MOTION DISMISS PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6)**

Hearing Date: November 10, 2025
Hearing Time: 1:30 p.m.
Courtroom: 9A

# TABLE OF CONTENTS

I. INTRODUCTION .......... 1

II. ARGUMENT .......... 2

A. Plaintiff Concedes that Two of Her CIPA Claims Should Be Dismissed. .......... 2

B. Plaintiff's Clause Two Claim Must be Dismissed Because Her Complaint Does Not Allege Interception of "Contents" Protected Under CIPA. .......... 3

C. Plaintiff's CIPA Claim Separately Fails Because She Cannot Allege that Facebook Intercepted Her Communications "Without Consent." .......... 8

a. The Complaint Fails to Allege That Plaintiff Did Not Consent to Facebook's Alleged Interception. .......... 8

b. The Court Can Decide the Applicability of the Facebook Terms at the Pleading Stage as a Matter of Law. .......... 9

D. Leave to Amend Should Be Denied Because Plaintiff Has Not Identified How Amendment Could Cure Her Complaint's Defects. .......... 12

III. CONCLUSION .......... 12

# TABLE OF AUTHORITIES


**Page(s)**

**Cases**

*Apple Inc. v. Allan & Assoc. Ltd.*, 445 F. Supp. 3d 42 (N.D. Cal. 2020) .......... 11

*Augustine v. Great Wolf Resorts, Inc.*, 2024 WL 3450967 (S.D. Cal. July 18, 2024) .......... 5

*Brodsky v. Apple, Inc.*, 445 F. Supp. 3d 110 (N.D. Cal. 2020) .......... 3

*Brown v. Google LLC*, 685 F. Supp. 3d 909 (N. D. Cal. Aug. 7, 2023) .......... 7

*Calhoun v. Google LLC*, 526 F. Supp. 3d 605 (N.D. Cal. 2021) .......... 10

*Castillo v. Costco Wholesale Corp.*, 2024 WL 4785136 (W.D. Wash. Nov. 14, 2024) .......... 7

*Cook, Perkiss & Liehe, Inc. v. N. Cal. Coll. Serv., Inc.*, 911 F.2d 242 (9th Cir. 1990) .......... 12

*Daghaly v. Bloomingdales.com, LLC*, 2024 WL 5134350 (9th Cir. Dec. 17, 2024) .......... 8

*Doe v. Tenet Healthcare Corp.*, 789 F. Supp. 3d 814 (E.D. Cal. 2025) .......... 4

*F.B.T. Prods., LLC v. Aftermath Recs.*, 621 F.3d 958 (9th Cir. 2010) .......... 11

*In re Facebook Biometric Info. Priv. Litig.*, 185 F. Supp. 3d 1155 (N.D. Cal. 2016) .......... 10

*In re Facebook, Inc. Internet Tracking Litigation*, 956 F.3d 589 (9th Cir. 2020) .......... 6, 9

*Facebook, Inc. v. 9 Xiu Network (Shenzhen) Tech. Co.*, 2021 WL 5707741 (N.D. Cal. Oct. 21, 2021) .......... 10

*Gershzon v. Meta Platforms, Inc.*,
2023 WL 5420234 (N.D. Cal. Aug. 22, 2023) .................................................... 7

*In re Google RTB Consumer Priv. Litig.*,
606 F. Supp. 3d 935 (N.D. Cal. 2022) ............................................................ 4

*Gray v. Luxottica of America, Inc.*,
2024 WL 5689566 (C.D. Cal. Dec. 16, 2024) .................................................... 7

*Gutierrez v. Converse Inc.*,
2023 WL 8939221 (C.D. Cal., Oct. 27, 2023) .................................................... 5

*Jones v. Tonal Sys., Inc.*,
751 F. Supp. 3d 1025 (S.D. Cal. 2024) ......................................................... 4, 5

*Licea v. Old Navy, LLC*,
669, F. Supp. 3d 941, 946-947 (C.D. Cal. 2023) ............................................... 9

*Lunn v. City of Los Angeles*,
629 F. Supp. 3d 1007 (C.D. Cal. 2022) .......................................................... 3

*Mata v. Zillow Group, Inc.*,
2024 WL 5161955 (S.D. Cal., Dec. 18, 2024) ................................................ 4, 6

*In re Meta Pixel Healthcare Litigation*,
647 F. Supp. 3d 778 (N.D. Cal. 2022) ............................................................ 7

*In re Meta Pixel Tax Filing Cases*,
724 F. Supp. 3d 987 (N.D. Cal. 2024) ............................................................ 9

*Meta Platforms, Inc. v. Ates*,
2023 WL 4035611 (N.D. Cal. May 1, 2023) ................................................... 10

*Meta Platforms, Inc. v. Nguyen*,
2023 WL 8686924 (N.D. Cal. Nov. 21, 2023) ................................................. 10

*People v. Avery*,
27 Cal. 4th 49 (2002) ..................................................................................... 7

*Ramos v. Gap*,
2025 WL 2144837 (N.D. Cal. July 29, 2025) ................................................ 4, 5

*Reyes v. Educational Credit Mgmt. Corp.*,
773 Fed. Appx. 989 (9th Cir. 2019) ................................................................ 9

*Smith v. Facebook, Inc.*,
745 F. App'x 8 (9th Cir. 2018) ........ 11

*Smith v. Google, LLC*,
2024 WL 2808270 (N.D. Cal. June 3, 2024) ........ 8

*Surgical Instrument Serv. Co., Inc. v. Intuitive Surgical, Inc.*,
571 F. Supp. 3d 1133 (N.D. Cal. 2021) ........ 3

*In re Vizio*,
2017 WL 11420284 (C.D. Cal. Jul. 25, 2017) ........ 8

*Yim v. City of Seattle*,
63 F.4th 783 (9th Cir. 2023) ........ 12

*Yoon v. Meta Platforms, Inc.*,
2024 WL 5264041 (N.D. Cal. Dec. 30, 2024) ........ 10

*In re Zynga Privacy Litigation*,
750 F.3d 1098 (9th Cir. 2014) ........ *passim*

**Statutes**

California Invasion of Privacy Act ("CIPA") ........ *passim*

CIPA § 631(a) ........ 9

CIPA § 631(a) Clause 1 ........ 1, 2, 12

CIPA § 631(a) Clause 2 ........ 3, 9

CIPA § 631(a) Clause 4 ........ 2

Electronic Communications Privacy Act ........ 3, 4

Wiretap Act ........ 3, 4

**Federal Rules of Civil Procedure**

Rule 12 ........ 11

Rule 12(b)(6) ........ 10

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Plaintiff's Opposition confirms what her Complaint already made clear: this lawsuit does not state a claim under the California Invasion of Privacy Act ("CIPA"). Despite accusing Move of sweeping privacy violations, Plaintiff now concedes that two of her asserted theories—direct interception by Move and a claim under Clause One of Section 631(a)—should be dismissed outright. Those concessions narrow this case to a single, defective theory of "aiding and abetting" liability under CIPA's Clause Four based on Facebook's alleged eavesdropping on the "contents" of her communication with Realtor.com. But that claim rests on allegations that are legally and factually deficient.

Plaintiff alleges simply that the Meta Pixel installed on Realtor.com "intercepted" her URL requests (i.e., websites she visited) and her Facebook ID number. That is not an actionable interception of "contents" under the leading Ninth Circuit case which addressed the definition "contents" under a parallel federal statute. In *In re Zynga Privacy Litigation*, 750 F.3d 1098 (9th Cir. 2014), the Court squarely held that precisely this kind of information—webpage addresses and numeric user identifiers—constitutes mere "record information," *not* "contents" of communications. Plaintiff's attempt to stretch the definition of "contents" by invoking non-binding and factually inapplicable district court decisions fails to overcome the weight of *Zynga*'s authority. No amount of creative pleading can transform a routine URL request into a substantive communication that generates liability under a criminal statute—something no court in this district has ever done.

Plaintiff's case also fails for a separate, independent reason: she consented to the alleged conduct. By her own admission, Plaintiff was a Facebook account holder, and therefore bound by Facebook's Terms, which expressly authorize Facebook to receive information from third-party websites via tools like the Meta Pixel. Having consented to this data exchange, Plaintiff cannot now claim that Facebook's receipt of that information was an unlawful "interception." Without a plausible factual allegation that Facebook

intercepted her communications "without consent," there is no underlying CIPA violation for Move to have "aided and abetted."

CIPA was enacted in the 1960s to prevent surreptitious wiretapping and listening of private phone conversations; it was never intended to penalize garden-variety targeted advertising that underpins much of the modern internet. Plaintiff's interpretation would stretch the statute beyond recognition, creating liability based on ubiquitous internet functionality and yielding absurd consequences the Legislature could never have imagined. Because Plaintiff has already abandoned two of her claims, and because the remaining claim fails as a matter of law under the plain meaning of CIPA and her own admission that she was a registered Facebook user at all relevant times, amendment would be futile. The Court should dismiss the Complaint in its entirety, and with prejudice.

## II. ARGUMENT

### A. Plaintiff Concedes that Two of Her CIPA Claims Should Be Dismissed.

Plaintiff's Complaint broadly accuses Move of various CIPA violations, including direct "intercepti[on]" of Plaintiff's electronic communications. *See* Compl. ¶ 39. Plaintiff's Complaint also cites to Clause One of Section 631(a), which prohibits any person or entity from "intentionally tap[ping], or mak[ing] any unauthorized connection … with any telegraph or telephone wire." *Id.* at ¶ 14. In her Opposition, however, Plaintiff concedes that she is *only* asserting an aiding and abetting claim under "the *fourth* clause of § 631(a)" based on Meta's supposed violation of "the second clause," which prohibits eavesdropping. *See* Opp'n p. 4, fn. 1 (emphasis in original).

Plaintiff's Opposition attempts to brush aside the Complaint's express allegations of direct interception and liability under Clause One of CIPA by characterizing Move's arguments on those subjects as "irrelevant." *Id.* In light of Plaintiff's concession, however, her imprecise pleading should be corrected via dismissal of Plaintiff's separate claims (incorporated within her single cause of action) for direct violation of the statute and for aiding and abetting liability based on any alleged violation of Clause One, which pertains only to telephonic wiretapping. "Where a party fails to address arguments against a claim

raised in a motion to dismiss, the claims are abandoned and dismissal is appropriate." *Lunn v. City of Los Angeles*, 629 F. Supp. 3d 1007, 1014 (C.D. Cal. 2022) (citation omitted); *see also Surgical Instrument Serv. Co., Inc. v. Intuitive Surgical, Inc.*, 571 F. Supp. 3d 1133, 1141 n.6 (N.D. Cal. 2021) ("[H]ow a plaintiff labels their claims is not what matters. What matters is whether a set of allegations constitutes one claim or several distinct legal claims."). There should be no question that dismissal of these separate, abandoned claims is proper.

**B. Plaintiff's Clause Two Claim Must be Dismissed Because Her Complaint Does Not Allege Interception of "Contents" Protected Under CIPA.**

Plaintiff does not dispute that, to state a claim under Section 631(a) Clause Two, Plaintiff must plausibly allege unauthorized access to the "contents" of her communication. Rather, the dispute here is narrow: whether a "URL request" and Facebook ID—the only pieces of information the Meta Pixel allegedly intercepts on Realtor.com, *see* Compl. ¶¶ 23-25—constitute "contents" protected under CIPA. Faced with clear Ninth Circuit authority holding that a webpage address and identifying information constitute only "record information" unprotected by CIPA, Plaintiff argues that a simple URL address contains the contents of the communications if the website address is descriptive. But that logic would swallow the rule in this Circuit because virtually every website address describes its contents, and Plaintiff has not cited a single case where a court in this district has found that a mere webpage address (i.e., not one that reveals search terms) constitutes the "contents" of a communication. *In re Zynga Privacy Litigation*, 750 F.3d 1098 (9th Cir. 2014) leaves no doubt that such information cannot support a CIPA claim.

In *Zynga*, the Ninth Circuit considered whether a URL and Facebook ID constituted "contents" under the Wiretap Act, one of the chapters of the Electronic Communications Privacy Act ("ECPA"). Courts have consistently recognized that the definition of "contents" is identical under CIPA and the ECPA. *See*, *e.g.*, *Brodsky v. Apple, Inc.*, 445 F. Supp. 3d 110 (N.D. Cal. 2020) (granting motion to dismiss CIPA claim based on lack of interception of "contents," basing definition of "contents" on the ECPA, and citing *Zynga*);

*In re Google RTB Consumer Priv. Litig.*, 606 F. Supp. 3d 935, 949 (N.D. Cal. 2022) ("the meaning of 'contents' of a communication under CIPA is the same under the ECPA"); *Doe v. Tenet Healthcare Corp.*, 789 F. Supp. 3d 814, 837 (E.D. Cal. 2025) ("A violation of CIPA is analyzed under the same standards applied to a violation of the ECPA. . . . The ECPA defines the term 'contents' as 'any information concerning the substance, purport, or meaning of that communication.'").[1] For this reason, courts adjudicating CIPA claims frequently rely on *Zynga*'s definition of "contents" as binding authority in the CIPA context. *See*, *e.g.*, *Jones v. Tonal Sys., Inc.*, 751 F. Supp. 3d 1025, 1037 (S.D. Cal. 2024); *Ramos v. Gap*, 2025 WL 2144837, at *4 (N.D. Cal. July 29, 2025).

The alleged "contents" at issue in *Zynga* were "referrer headers," which "contain[ed] the user's Facebook IDs and the URLs" they visited. 750 F.3d at 1105. The Ninth Circuit defined "contents" as "the intended message conveyed by [a] communication," and unambiguously determined that neither the URL someone visits online nor their Facebook ID meet that definition:

> A Facebook ID identifies a Facebook user and so functions as a 'name' or a 'subscriber number or identity'. . . . Similarly, ***the webpage address identifies the location of a webpage a user is viewing on the internet, and therefore functions like an 'address.' Congress excluded this sort of record information from the definition of 'contents.'***

*Id.* at 1106-07 (internal citations omitted; emphasis added). In so holding, the Ninth Circuit clearly delineated between URLs reflecting "address information," which is "not the contents of a communication," and URLs divulging "a search term or similar communication ***made by the user***," which "could amount to . . . the contents of a communication." 750 F.3d at 1107-09 (emphasis added). The Ninth Circuit endorsed this

[1] Plaintiff does not dispute this fact; to the contrary, her cited cases similarly acknowledge that "[t]he analysis for a violation of CIPA is the same as that under the federal Wiretap Act." *See Mata v. Zillow Group, Inc.*, 2024 WL 5161955, at *5 (S.D. Cal., Dec. 18, 2024) (citing *Underhill v. Kornblum*, 2017 WL 2869734, at *6 (S.D. Cal. Mar. 16, 2017)).

distinction even for webpage addresses that "disclose specific information regarding a webpage that a user previously viewed," including sensitive information such as "the Facebook page of a gay support group" viewed by "a Facebook user who was gay and struggling to come out of the closet," holding that ***"[i]nformation about the address of the Facebook webpage the user was viewing is distinguishable from the sort of communication involving a search engine"*** (where, for example, the URL may include search terms submitted by a user, which is not the case here). *Id*. at 1108 (emphasis added).

Following *Zynga*, district courts have distinguished the alleged disclosure of URLs revealing user-inputted search queries, which may constitute "contents," from those involving mere webpage addresses, which decidedly do not. *See*, *e.g.*, *Ramos v. Gap*, 2025 WL 2144837, at *7 (N.D. Cal. July 29, 2025) (holding that the URLs at issue were not "contents" and dismissing CIPA claim because "Plaintiff has not alleged that [] communicative information was transmitted through the URLs," as distinguished from a situation in which "the log-in buttons and descriptive URLs that Meta obtained constituted content for purposes of CIPA ***because they contained the 'query string,'*** which included any searches the user may have done on the healthcare provider's website" (emphasis added)); *Gutierrez v. Converse Inc.*, 2023 WL 8939221, at *3 (C.D. Cal., Oct. 27, 2023) (in CIPA case, finding that "'[c]ontents' refers to the intended message conveyed by the communication, and ***does not include*** . . . miscellaneous information like IP addresses, keystrokes, and ***pages viewed***.") (emphasis added) (quoting *Zynga*, 730 F.3d at 1106); *see also Jones v. Tonal Sys., Inc.*, 751 F. Supp. 3d at 1037–38 (applying *Zynga* in CIPA case to conclude that allegations concerning "us[e of] cookies to track website visitor activity" did not amount to the interception of "contents" of a communication); *Augustine v. Great Wolf Resorts, Inc.*, 2024 WL 3450967, at *1, 5–6 (S.D. Cal. July 18, 2024) (holding in CIPA case that third-party tracking of website browsing activity, including "pages . . . viewed," using JavaScript tracking code which placed cookies onto Plaintiff's browser, failed to constitute the alleged interception of "content"). Here, Plaintiff does not allege that she inputted *any* search queries into Realtor.com or that the URLs at issue contain

anything more than the addresses of webpages on which videos are allegedly hosted, the presence of which no more transmutes those URLs into "contents" than does a webpage address reflecting that the user visited a "gay support group." *Zynga*, 750 F.3d at 1108.

Plaintiff's Opposition ***completely ignores*** the Ninth Circuit's holding in *Zynga*, instead citing non-binding district court cases that are factually distinguishable. Plaintiff relies heavily on *Mata v. Zillow Group, Inc.*, 2024 WL 5161955 (S.D. Cal. Dec. 18, 2024), for the alleged proposition that "information about which specific video tours the plaintiff requested" constitutes protected "contents" under CIPA. Opp'n at 7:9-11. The *Mata* case does not apply here for two reasons. First, the *Mata* court inexplicably failed to address the relevant holding in *Zynga* regarding the definition of "contents"; it relied instead on *In re Facebook, Inc. Internet Tracking Litigation*, 956 F.3d 589 (9th Cir. 2020), which did not address the definition of "contents" but rather held that the plaintiffs sufficiently pled a *reasonable expectation of privacy* for purposes of *state-law invasion of privacy claims* based on internet *search terms reflected in a URL*. *See id.* at 605-606 (noting the plaintiffs "allege[d] that the URLs . . . could emanate from search terms inputted into a third-party search engine"). Second, a close look at the *Mata* court's reasoning shows that it supports Move's argument here—not Plaintiff's—because, as the court explained, the Meta Pixel at issue had "access to the content of individuals' ***searches on websites***." *Mata*, 2024 WL 5161955 at *5 (emphasis added). Here, the record is clear that Plaintiff bases her "contents" theory on the Meta Pixel's alleged receipt of URLs reflecting the web addresses Plaintiff visited. *See* Compl. ¶ 25. *Mata* is thus materially distinguishable and inapplicable here. In contrast, the Ninth Circuit in *Zynga* instructs exactly how to interpret the facts alleged in Plaintiff's Complaint: a Facebook ID and a URL reflecting nothing more than a webpage address (with no allegations of embedded user search terms) are not "contents" protected

by CIPA.[2]

The vast majority of Plaintiff's cited cases similarly involve the alleged interception of URLs allegedly reflecting user-inputted search terms and are thus clearly distinguishable under *Zynga*:

- *Gray v. Luxottica of America, Inc.*, WL 5689566 (C.D. Cal. Dec. 16, 2024) alleged the interception of URLs reflecting the plaintiff's "personal search queries" regarding "treatments for medical conditions." *Id.* at *7–8.
- *Castillo v. Costco Wholesale Corp.*, 2024 WL 4785136 (W.D. Wash. Nov. 14, 2024) alleged the interception of URLs revealing the plaintiffs' "searches" for "patient status, prescriptions, underlying health conditions, and other Sensitive Information." *Id.* at *4 (relying on the fact that the URLs at issue were not merely "descriptive").
- *Gershzon v. Meta Platforms, Inc.*, 2023 WL 5420234 (N.D. Cal. Aug. 22, 2023) alleged the interception of DMV searches revealing information identifying someone as disabled. *Id.* at *3 (relying on the fact that the URLs at issue contained "search results and answers," such that a "user who asks the DMV 'How do I renew a disabled parking placard?' has their disability information transmitted to Meta'").
- *Brown v. Google LLC*, 685 F. Supp. 3d 909 (N. D. Cal. Aug. 7, 2023) alleged the interception of personal, user-inputted search queries. *Id.* at 935-36.
- *In re Meta Pixel Healthcare Litigation*, 647 F. Supp. 3d 778, 795 (N.D. Cal. 2022) alleged the interception of URLs containing the plaintiff's query strings concerning private health matters. *Id.* at 798.

The remainder of Plaintiff's cited cases are not about URLs at all. *Smith v. Google, LLC*, 2024 WL 2808270 (N.D. Cal. June 3, 2024), involved allegations that "H&R Block, TaxAct, and TaxSlayer have been quietly transmitting sensitive financial information to

---

[2] To the extent any ambiguity exists as to the correct interpretation of "contents" under this Penal Code provision, the rule of lenity instructs that the Court should construe any doubt in favor of Move. *See People v. Avery*, 27 Cal. 4th 49, 58 (2002) ("ambiguous penal statutes are construed in favor of defendants . . . [if] two reasonable interpretations of the same provision stand in relative equipoise.").

Google when Americans file their taxes online." *Id.*, at *5. It has no application here. Likewise, *In re Vizio*, 2017 WL 11420284 (C.D. Cal. Jul. 25, 2017), addressed Vizio's Smart TV data collection and disclosure practices—a completely different and inapplicable context that sheds no light on whether URLs constitute protected "contents" under CIPA. *Id.*, at *6.

Putting aside Plaintiff's misplaced authority, *Zynga* is the relevant law on whether the webpage addresses and Facebook IDs at issue constitute "contents," and the answer is a resounding "no": there is no question that the limited information Plaintiff alleges Meta intercepted here is "***excluded***" from the definition of "contents" espoused by the Ninth Circuit. *Zynga*, 750 F.3d at 1107 (emphasis added); *see also Daghaly v. Bloomingdales.com, LLC*, 2024 WL 5134350, at *1 (9th Cir. Dec. 17, 2024) (plaintiffs pointed to "no authority suggesting that the fact that [the plaintiff] visited [a website] (as opposed to information she might have entered while using the website) constitutes 'contents' of a communication within the meaning of CIPA Section 631"). The Court can and should dispense with Plaintiff's entire Complaint on this basis.

**C. Plaintiff's CIPA Claim Separately Fails Because She Cannot Allege that Facebook Intercepted Her Communications "Without Consent."**

Plaintiff's consent to the Facebook Terms attached to Move's Request for Judicial Notice (ECF No. 15)[3] provides an independent ground for dismissal of Plaintiff's Complaint.

**a. The Complaint Fails to Allege That Plaintiff Did Not Consent to Facebook's Alleged Interception.**

Plaintiff's Opposition incorrectly asserts that she "need only allege that she did not consent to the conduct at issue," as opposed to "affirmatively plead[ing] that Facebook (an unnamed third party) lacked consent to intercept her communications with Defendant." Opp'n at 8-9. But Plaintiff ignores the plain meaning of Section 631(a), which is that to

[3] Plaintiff did not file any opposition to Move's Request for Judicial Notice. The Court should therefore grant it as unopposed.

plead an aiding and abetting violation of Section 631(a), a plaintiff must "first adequately plead . . . [a] ***third party's*** . . . underlying violations of the statute." *Licea v. Old Navy, LLC*, 669, F. Supp. 3d 941, 946 (C.D. Cal. 2023) (emphasis added); Cal. Penal C. § 631(a) (prohibiting under Clause Two "[a]ny person" from eavesdropping on the "contents" of a communication "willfully and without the consent of all parties to the communication"). The Ninth Circuit has held that it is Plaintiff's affirmative pleading burden to allege a lack of consent. *Reyes v. Educational Credit Mgmt. Corp.*, 773 F. Appx. 989, 990 n.1 (9th Cir. 2019) ("the plaintiff bringing a CIPA claim has the burden to prove that the defendant lacked consent"). In other words, to state an aiding and abetting claim against *Move* based on Facebook's alleged violation of Section 631(a) Clause Two, Plaintiff must allege that *Facebook* eavesdropped "without [her] consent." Cal. Penal C. § 631(a). It therefore follows that if Facebook's alleged interception occurred *with Plaintiff's consent*—as it did here—then there can be no aiding and abetting because no underlying CIPA violation occurred.

Plaintiff's Complaint should be dismissed for failure to plausibly allege that she did not consent to Facebook's alleged interception of her communications with Realtor.com. As discussed below, such pleading failure cannot be corrected because the Court can and should hold as a matter of law that Plaintiff affirmatively consented to the Meta Pixel's alleged activity on Realtor.com.

**b. The Court Can Decide the Applicability of the Facebook Terms at the Pleading Stage as a Matter of Law.**

Plaintiff seeks to avoid the conclusion that she consented to the relevant Facebook Terms by conspicuously sidestepping a key concession in her Complaint: that Plaintiff "has been a Facebook account holder" at all relevant times. *See* Compl. ¶ 34. Though Plaintiff relies on *In re Meta Pixel Tax Filing Cases*, 724 F. Supp. 3d 987 (N.D. Cal. 2024) and *Yoon v. Meta Platforms, Inc.*, 2024 WL 5264041 (N.D. Cal. Dec. 30, 2024), for the alleged proposition that such consent cannot be determined in the context of a Rule 12(b)(6) motion, those cases are distinguishable as the plaintiffs in those cases specifically alleged

that they did not consent, and there was nothing before the courts that permitted them to conclude at the pleading stage that the plaintiffs had in fact agreed to terms covering the conduct at issue.[4] Here, by contrast, Plaintiff does *not* allege that she did not consent to Facebook's alleged interception of her data, and instead *affirmatively alleges* that she has been a Facebook account holder at all relevant times.

Numerous courts have found that Facebook account holders are bound by the Facebook Terms by virtue of the non-negotiable Facebook sign-up process. *See*, *e.g.*, *In re Facebook Biometric Info. Priv. Litig.*, 185 F. Supp. 3d 1155, 1167 (N.D. Cal. 2016) ("plaintiffs assented to the user agreement ***when they signed up for Facebook***") (emphasis added); *Meta Platforms, Inc. v. Nguyen*, 2023 WL 8686924, at *7 (N.D. Cal. Nov. 21, 2023) ("***When they created Facebook accounts***, Defendants agreed to Facebook's TOS.") (emphasis added); *Meta Platforms, Inc. v. Ates*, 2023 WL 4035611, at *6 (N.D. Cal. May 1, 2023) ("***When [plaintiff] created Instagram accounts***, he agreed to Instagram [owned by Meta]'s terms of service.") (emphasis added); *Facebook, Inc. v. 9 Xiu Network (Shenzhen) Tech. Co.*, 2021 WL 5707741, at *5 (N.D. Cal. Oct. 21, 2021) ("***When they created Facebook and Instagram accounts***, the defendants agreed to terms of service and community standards.") (emphasis added).

Though Plaintiff's Opposition asserts vaguely that "she did not" assent to the Facebook Terms (Opp'n at 11:8-9), she provides no factual basis for this assertion, which is *implausible* in light of the facts she has alleged (i.e., that she was a Facebook account holder). "[I]t is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss." *Apple Inc. v. Allan & Assoc. Ltd.*, 445 F. Supp. 3d 42, 59 (N.D. Cal. 2020) (internal quotation marks omitted). Plaintiff's assertion also defies reality, as

---

[4] Plaintiff's other case on this point, *Calhoun v. Google LLC*, 526 F. Supp. 3d 605, 620 (N.D. Cal. 2021) is about Google, not Facebook. The *Calhoun* court determined that the terms' wording was ambiguous, including where those terms stated that "You don't need to provide any personal information" to use the services in question. *Id.* Here, in contrast, Plaintiff points to no ambiguous language in the Facebook Terms, nor does she challenge any of the specific language to which Move cites.

she cannot plausibly deny that her status as a Facebook account holder means she consented to the Facebook Terms—and therefore consented to the activities of the Meta Pixel as alleged in her Complaint.

Plaintiff's Opposition largely ignores the language of the Facebook Terms, arguing in a conclusory manner that the terms do not disclose the "particular conduct at issue." *See* Opp'n at 11:8-11. That is false. Facebook account holders like Plaintiff expressly consent to Facebook's right to receive from third parties their "device information, ***[w]ebsites [they] visit*** and cookie data, like through Social Plugins or the Meta Pixel." Declaration of Elizabeth Baldridge in Support of Request for Judicial Notice, Ex. A (ECF No. 15-1) at p. 017 (emphasis added); pp. 016-017 (explaining that third parties like Realtor.com "might put one of [Facebook's] Business Tools, the Meta Pixel, on their website" in order to send Facebook "device information," information about "websites you visit," and "your advertising device ID" in order to "match your activities with your [Facebook] account"). This consent plainly includes Facebook's alleged use of the Meta Pixel to obtain the URLs of the Realtor.com webpages Plaintiff visited while she was a Facebook account holder, along with her Facebook ID. Plaintiff's indisputable consent to such activity forecloses any claim based on these allegations, as "[a] reasonable person viewing those disclosures would understand that Facebook maintains the practices of (a) collecting its users' data from third-party sites and (b) later using the data for advertising purposes." *Smith v. Facebook, Inc.*, 745 F. App'x 8, 8-9 (9th Cir. 2018) (interpreting issue in context of Rule 12 motion to dismiss); *see also F.B.T. Prods., LLC v. Aftermath Recs.*, 621 F.3d 958, 964 (9th Cir. 2010) (a "contractual term is not ambiguous just because it is broad.").

Plaintiff's attempt to attack the foundation of targeted advertising on the internet would transform a 1967 statute designed to prevent criminal eavesdropping and wiretapping into a prohibition on routine online activity. Even worse, she makes this claim notwithstanding her own express consent to such tracking and advertising in exchange for her use of Facebook's free service. This interpretation of CIPA would result in the kind of absurd consequences that courts avoid. *See Yim v. City of Seattle*, 63 F.4th 783, 792 (9th

Cir. 2023) ("We are not required to interpret a statute in a formalistic manner when such an interpretation would produce a result contrary to the statute's purpose or lead to unreasonable results.").

### D. Leave to Amend Should Be Denied Because Plaintiff Has Not Identified How Amendment Could Cure Her Complaint's Defects.

Plaintiff requests permission to amend her Complaint if the Court finds deficiencies. Opp'n at 11:17-12:5. But Plaintiff makes no effort to identify a single factual change she would make to her Complaint that could cure its fatal flaws. Absent any explanation from Plaintiff as to how she can meaningfully amend her allegations to state a viable claim (she cannot), the Court should dismiss her Complaint with prejudice. *See Cook, Perkiss & Liehe, Inc. v. N. Cal. Coll. Serv., Inc.*, 911 F.2d 242, 247 (9th Cir. 1990).

## III. CONCLUSION

Plaintiff concedes that her claim for a direct violation of CIPA and any claim under Section 631(a) Clause One should be dismissed. The remainder of her CIPA cause of action fails for two independent reasons. First, binding Ninth Circuit authority holds that the information at issue—a URL reflecting a webpage address, and a Facebook ID—is not protectible as "contents" of a communication. *Zynga*, 750 F.3d at 1107. Second, Plaintiff does not and cannot establish that Move aided and abetted an underlying violation of CIPA because she does not plausibly allege lack of consent to Facebook's alleged interception, and in fact she expressly consented to the Facebook Terms, which permit the precise conduct at issue here. No amendment can cure these defects. For these reasons, Move respectfully requests that the Court dismiss Plaintiff's Complaint with prejudice.

Dated: October 29, 2025 JENNER & BLOCK LLP

By: */s/ David R. Singer*
David R. Singer
Kate T. Spelman
Elizabeth Baldridge
Kara Brandeisky

Attorneys for Defendant Move, Inc.

## CERTIFICATE OF COMPLIANCE

This certifies that Move's brief complies with the requirements of Local Rule 11-6. The brief contains 3,946 words as calculated by the word processing program.

Dated: October 29, 2025 */s/ David R. Singer*
David R. Singer