UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | CV 25-7905 PA (ASx) | Date | October 29, 2025 |
| Title | Nicki Apaydin v. Move, Inc. | | |

| | |
|---|---|
| Present: The Honorable | PERCY ANDERSON, UNITED STATES DISTRICT JUDGE |

| | |
|---|---|
| Kamilla Sali-Suleyman | Not Reported |
| Deputy Clerk | Court Reporter / Recorder |
| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
| None | None |

**Proceedings:** **IN CHAMBERS — COURT ORDER**

Before the Court is a Motion to Dismiss filed by defendant Move, Inc. ("Defendant") (Docket No. 14). Defendant challenges the sufficiency of the Complaint filed by plaintiff Nicki Apaydin ("Plaintiff"). Pursuant to Rule 78 of the Federal Rules of Civil Procedure and Local Rule 7-15, the Court finds that this matter is appropriate for decision without oral argument. The hearing calendared for November 10, 2025, has been vacated, and the matter taken off calendar.

## I. Factual and Procedural Background

Plaintiff originally filed her Complaint in Los Angeles County Superior Court on July 22, 2025. Defendant removed the action pursuant to the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d). Plaintiff, on behalf of herself and a putative class of "[a]ll persons within the State of California who, during the relevant limitations period, visited www.realtor.com and requested or viewed video content," alleges a single claim pursuant to the California Invasion of Privacy Act ("CIPA"), California Penal Code section 631(a), which creates a private right of action for various "wiretapping" activities. (Compl. ¶ 41.) Plaintiff's Complaint alleges that Defendant owns and operates the "realtor.com" website, which provides online property listings and hosts "various types of video content, including videos which allow its Website visitors to take virtual tours of real estate listing[s] posted on Defendant's website." (Id. ¶ 18.)

According to the Complaint, Defendant's website "installed third-party tracking technologies into its Website so that whenever visitors watch video content, their [Personally Identifiable Information ("PII")] and the contents of their electronic communications are intercepted in real time while in transit by such third parties, including by Facebook via its Meta Pixel." (Id. ¶ 21.) "The Meta Pixel is a piece of code that online media providers, like Defendant, can integrate into their websites. Once activated, the Meta Pixel tracks user's PII (such as the users' identity and the specific video content they requested) and the type of actions they take on the website and disseminates that information to Facebook." (Id. ¶ 22.) "When a Facebook user interacts with Realtor.com, the Meta Pixel intercepts that Facebook user's

interactions and [Facebook ID] causing the user's identity and electronic communications to be transmitted to Facebook." (Id. ¶ 23.) Plaintiff alleges that she has "has been a Facebook account holder" at all relevant times. (Id. ¶ 34.) According to Plaintiff, she "never specifically and separately consented, agreed, authorized, or otherwise permitted Defendant to disclose, and aid in the interception of, her electronic communications to third parties." (Id. ¶ 37.)

## II. Legal Standard

Generally, plaintiffs in federal court are required to give only "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). While the Federal Rules allow a court to dismiss a cause of action for "failure to state a claim upon which relief can be granted," they also require all pleadings to be "construed so as to do justice." Fed. R. Civ. P. 12(b)(6), 8(e). The purpose of Rule 8(a)(2) is to "'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555, 127 S. Ct. 1955, 1964, 167 L. Ed. 2d 929 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47, 78 S. Ct. 99, 103, 2 L. Ed. 2d 80 (1957)). The Ninth Circuit is particularly hostile to motions to dismiss under Rule 12(b)(6). See, e.g., Gilligan v. Jamco Dev. Corp. , 108 F.3d 246, 248-49 (9th Cir. 1997) ("The Rule 8 standard contains a powerful presumption against rejecting pleadings for failure to state a claim.") (internal quotation omitted).

However, in Twombly, the Supreme Court rejected the notion that "a wholly conclusory statement of a claim would survive a motion to dismiss whenever the pleadings left open the possibility that a plaintiff might later establish some set of undisclosed facts to support recovery." Twombly, 550 U.S. at 561, 127 S. Ct. at 1968 (internal quotation omitted). Instead, the Court adopted a "plausibility standard," in which the complaint must "raise a reasonable expectation that discovery will reveal evidence of [the alleged infraction]." Id. at 556, 127 S. Ct. at 1965. For a complaint to meet this standard, the "[f]actual allegations must be enough to raise a right to relief above the speculative level." Id. at 555, 127 S. Ct. at 1965 (citing 5 C. Wright & A. Miller, Federal Practice and Procedure §1216, pp. 235-36 (3d ed. 2004) ("[T]he pleading must contain something more . . . than . . . a statement of facts that merely creates a suspicion [of] a legally cognizable right of action") (alteration in original)); Daniel v. County of Santa Barbara, 288 F.3d 375, 380 (9th Cir. 2002) ("'All allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party.'") (quoting Burgert v. Lokelani Bernice Pauahi Bishop Trust, 200 F.3d 661, 663 (9th Cir. 2000)). "[A] plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555, 127 S. Ct. at 1964-65 (internal quotations omitted). In construing the Twombly standard, the Supreme Court has advised that "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are

not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Ashcroft v. Iqbal, 556 U.S. 662, 679, 129 S. Ct. 1937, 1950, 173 L. Ed. 2d 868 (2009).

## III. Analysis

CIPA, and specifically section 631(a), "prescribes criminal penalties for three distinct and mutually independent patterns of conduct: intentional wiretapping, wilfully attempting to learn the contents or meaning of a communication in transit over a wire, and attempting to use or communicate information obtained as a result of engaging in either of the previous two activities." Tavernetti v. Superior Ct., 22 Cal. 3d 187, 192, 148 Cal. Rptr. 883, 887 (1978). Section 631(a) imposes liability on:

> Any person who, by means of any machine, instrument, or contrivance, or in any other manner, [1] intentionally taps, or makes any unauthorized connection, whether physically, electrically, acoustically, inductively, or otherwise, with any telegraph or telephone wire, line, cable, or instrument, including the wire, line, cable, or instrument of any internal telephonic communication system, or [2] who willfully and without the consent of all parties to the communication, or in any unauthorized manner, reads, or attempts to read, or to learn the contents or meaning of any message, report, or communication while the same is in transit or passing over any wire, line, or cable, or is being sent from, or received at any place within this state; or [3] who uses, or attempts to use, in any manner, or for any purpose, or to communicate in any way, any information so obtained, or [4] who aids, agrees with, employs, or conspires with any person or persons to unlawfully do, or permit, or cause to be done any of the acts or things mentioned above in this section . . . .

Cal. Penal Code § 631(a) (with bracketed numbers added to clarify the 4 prongs of the statute).

There has been a wave of actions filed in recent years alleging substantially similar CIPA claims to those asserted by Plaintiff in this action concerning website tracking and the embedding of analytics tools like the Meta Pixel. As one District Court recently explained:

> The language of CIPA is a total mess. It was a mess from the get-go, but the mess gets bigger and bigger as the world continues to change and as courts are called upon to apply CIPA's already-obtuse language to new technologies. Indeed, we have reached the point where it's often borderline impossible to determine whether a defendant's online conduct fits within the language of the statute.

Jane Doe v. Eating Recovery Ctr., LLC, Case No. CV 23-5561 VC, 2025 WL 2971090, at *1 (N.D. Cal. Oct. 17, 2025).

In its Motion to Dismiss, Defendant asserts that it cannot be liable under section 631(a)'s first prong because her claim does not involve the tapping of a telephone or telegraph line. In her Opposition, Plaintiff clarifies that her Complaint relies only on section 631(a)'s fourth prong, imposing liability on any person who assists another, in this instance Facebook through the Meta Pixel, to violate section 631(a)'s second prong. (Opp'n at 4 n.1.) As such, according to Plaintiff, Defendant's argument that a party to the communication is exempt from liability does not shield Defendant in this instance. Defendant additionally contends that even under a liability theory relying on section 631(a)'s fourth prong, Plaintiff has failed to state a viable CIPA claim because the Complaint does not allege that the information conveyed through the Meta Pixel was the "contents" of a communication instead of only the URLs and other website address information of the pages Plaintiff visited on Defendant's website. Defendant additionally seeks to have the Court take judicial notice of Facebook's terms of service, which disclose Facebook's use of tools like the Meta Pixel and use of information from third-party websites to establish that Plaintiff consented to the interception of information gleaned during her use of Defendant's website despite the Complaint's allegations that Plaintiff did not consent to the interception of the information.

As have many courts in the Ninth Circuit to have addressed similar claims, the Court concludes that it is unable to conclude at this stage of the litigation that Plaintiff's Complaint concerning use of the Meta Pixel fails to state a viable CIPA claim where the Complaint does allege that "the contents of [a visitor to Defendant's website's] communications are intercepted" (Compl. ¶ 21) and the "specific video content they requested . . . and the type of actions they take on the website" (Id. at ¶ 22) are disseminated through the Meta Pixel. See, e.g., Gray v. Luxottica of America, Inc., SACV 24-160 MRA (DFMx), 2024 WL 5689566, at *5-*6 (C.D. Cal. Dec. 16, 2024) (collecting cases); see also id. at *6-*7 (rejecting a 12(b)(6) argument concerning whether the complaint adequately alleged the "contents" of the communications at

the pleading stage).[1/] It may turn out that the "contents" of Plaintiff's communications on Defendant's website were not intercepted, but the Court cannot conclude that Plaintiff has failed to plausibly allege that the "contents" of her communications were intercepted under the applicable federal pleading standard. See In re Zynga Privacy Litig., 750 F.3d 1098, 1108-09 (9th Cir. 2014) ("Under some circumstances, a user's request to a search engine for specific information could constitute a communication such that divulging a URL containing that search term to a third party could amount to disclosure of the contents of a communication.").

The Court additionally concludes that even if it may take judicial notice of Facebook's terms of service, it cannot take judicial notice of the "fact" of Plaintiff's consent to those terms of service when the Complaint alleges that she did not consent to the interception. Defendant relies on a summary judgment case, where a court considered evidence concerning the method by which particular users consented to Facebook's terms of service, and three motions for default judgment, where factual allegations of consent were presumed true, to support its argument that a Court can conclude as a matter of law that the holder of a Facebook account has consented to Facebook's terms of service. See In re Facebook Biometric Info. Privacy Litig., 185 F. Supp. 3d 1155, 1164-67 (N.D. Cal. 2016) (finding consent to Facebook's terms of service on summary judgment after reviewing the methods by which Facebook informed its users of the terms of service and the particular ways in which each plaintiff manifested that consent with references to deposition testimony); see also Meta Platforms, Inc. v. Nguyen, CV 21-5002 TSH, 2023 WL 868924, at *2 (N.D. Cal. Nov. 21, 2023) (accepting as true allegations in complaint concerning consent to Facebook's terms of service when resolving a motion default judgment); Meta Platforms, Inc. v. Ates, Case No. CV 22-3918 TSH, 2023 WL 4035611, at *1 (N.D. Cal. May 1, 2023) (same for Instagram's terms of use); Facebook, Inc. v. 9 Xiu Network (Shenzen) Tech. Co., CV 19-1167 JST (AGT), 2021 WL 5707741, at *1 & *5 (N.D. Cal. Oct. 21, 2021) (same for Facebook and Instagram). These cases do not allow the Court, at the pleading stage, to conclude as a matter of law that Plaintiff consented to Facebook's terms of service.[2/]

---

[1/] The Court notes that the recent Eating Recovery Ctr. decision involved a Motion for Summary Judgment and relied on an "in transit" argument that Defendant did not assert in its Motion to Dismiss.

[2/] To the extent there is a factual dispute concerning the circumstances under which Plaintiff, or any other member of the putative class, may have consented to Facebook's terms of service, such factual disputes may create difficulties at the class certification stage should such issues call into question, among other Rule 23 factors, the typicality of Plaintiff's claims, unique defenses related to her consent, and predominance questions should the consent of putative class members require individualized factual determinations. Those issues are not presented in this Motion to Dismiss, but may become important should Plaintiff seek to certify a class.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 25-7905 PA (ASx) | Date | October 29, 2025 |
| --- | --- | --- | --- |
| Title | Nicki Apaydin v. Move, Inc. | | |

**Conclusion**

For all of the foregoing reasons, the Court concludes that Plaintiff has alleged sufficient facts to state a plausible CIPA claim at this stage of the proceedings. The Court therefore denies Defendant's Motion to Dismiss. Defendant shall file its Answer to the Complaint by no later than November 10, 2025.

IT IS SO ORDERED.